Clarence FORMAN, Annie Forman, Thelma Welch, John Welch, Clarence Forman, Jr., and Dorothy Forman, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15892.

United States Court of Appeals Eighth Circuit.

July 8, 1958.

George J. Danforth, Jr., Sioux Falls, S. D., for appellants.

Robert S. Griswold, Jr., Attorney, Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Clinton G. Richards, U. S. Atty., Lyle E. Cheever, Asst. U. S. Atty., Sioux Falls, S. D., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This action was brought by the United States, for and on behalf of the Yankton Sioux Tribe of Indians, to quiet title to and regain possession of a tract of approximately 80 acres of land occupied by the defendants, Clarence Forman and members of his family,[1] and to enjoin defendants from removing certain improvements they had erected upon the land. Defendants answered that this land had been allotted to Clarence For-

---

1. The issues in this case turn upon the rights of the defendant Clarence Forman. Other defendants' rights are dependent upon those of Forman.

man, and by cross-complaint stated that Clarence Forman was qualified for an allotment as a member of the Yankton Sioux Tribe and that the land he occupied was available for allotment purposes. Defendants asked that title to the land be affirmed in Clarence Forman. The United States denied the allegations of the cross-complaint.

After trial to the court without a jury, judgment was entered establishing title and right to possession of the land in the United States and dismissing the cross-complaint.[2]

Jurisdiction of this controversy was conferred upon the trial court by 25 U.S.C.A. § 345 and 28 U.S.C.A. § 1345.

The trial court, in its unreported opinion, based its decision and judgment upon the following conclusions:

1. Clarence Forman is not entitled to an allotment because he was born on December 18, 1892, a date subsequent to the completion of allotments on the Yankton Sioux Reservation.

2. The land occupied and claimed by Forman is not available for allotment purposes.

If the trial court was correct in either of the above conclusions, the judgment must be affirmed.

We are satisfied that the court's determination that the land claimed by Forman is not available for allotment purposes must be upheld.

Forman contended that the land he occupied is public land. Section 4 of the 1891 Allotment Act, 26 Stat. 795, as amended, 25 U.S.C.A. § 336, provides that where an Indian entitled to an allotment makes settlement on "lands of the United States not otherwise appropriated," he shall be entitled to have such land allotted to him. It is necessary to examine the facts to determine whether the real estate here involved are "lands of the United States not otherwise appropriated."

The real estate here involved was originally a part of the Yankton Sioux Reservation created by the Treaty of April 19, 1858, 11 Stat. 743. Allotment had been made of this parcel to Pretty Crazy Eyes, but this allotment was relinquished, and the patent was cancelled on August 17, 1892. By an agreement between the Government and the Yankton Sioux Tribe dated December 31, 1892, and ratified by Congress on August 15, 1894, 28 Stat. 286, 314, the unallotted land remaining in the original reservation was conveyed to the United States for $600,-000 for disposal under the public land laws. Article VIII of said agreement specifically reserved from sale as public land, "Such part of the surplus lands hereby ceded and sold to the United States, as may be now occupied by the United States for agency, schools, and other purposes". The crucial question in this case is whether the land here involved falls within the Article VIII reservation. Upon this issue the trial court states:

> " * * * This particular tract was not, at the time of the closing of the allotment rolls, ' * * * any surveyed or unsurveyed lands of the United States not otherwise appropriated * * * ', for the reason that Govt.'s Exs. 4, 5, 6, 7 and 8 all show that this tract had, prior thereto, become a part of the administrative reserve as a site on which to build a government warehouse and farmer's residence, and that it was actually in use for such purposes prior to the execution of the agreement of December 31, 1892 * * *."

The trial court's findings are supported by substantial evidence.

A letter dated May 16, 1892, from the Indian Agent at Yankton to the Commis-

---

2. The court also offset rental claims of the Government against the value of certain improvements erected by the defendants, enjoined the removal of such improvements, and permitted the removal of certain temporary structures. Such portions of the judgment are not challenged here except to the extent that they are affected by the determination of the issues discussed in the opinion.

sioner of Indian Affairs, pertaining to this land, insofar as material here, reads:

"I will state, that as heretofore explained to you in my letter dated Aug. 25, 1891 that the location is a desirable one, for the establishment of a sub-station with the residence of an additional farmer and family with a small farm, also a warehouse in which can be stored farm machinery and other property belonging to the Government, and for such other uses as may be hereafter designated.

"I will also state that the title or possession of this land was really relinquished more than a year ago, and that there has already been expended about $800 in the construction of buildings thereon which it is expected to complete during the current year."

It seems clear from this letter and other evidence that this land was being used for administrative purposes on December 31, 1892, and had been used for such purpose for some time prior thereto, and that hence the tract was reserved from sale as public land by Article VIII.

Defendants' contention that the reservation for administrative purposes was accomplished by an administrative order dated August 27, 1894, is without merit. Under Article VIII it is the use of the property that removes it from sale as public land. The act does not require the formal execution of any documents to create the reservation. We note that the August 27, 1894, list of reserved land was transmitted to the Land Office with the record of approved allotments. This transmittal occurred within a few weeks after the congressional ratification of the contract. It would appear that the reservation order was merely a ministerial act making a record of the fact that the land had been and still was in use for administrative purposes.

The land continued in use for administrative purposes until 1932. In that year defendant Forman received a permit to occupy the land upon the payment of an agreed rental. A similar arrangement was made for 1933. Since then, Forman has remained in possession of the land without any agreement as to occupancy and without paying rent.

On February 28, 1946, the Secretary of the Interior entered an order revoking the administrative status of this land and reverting it to the status of tribal property. This order was issued pursuant to Act Feb. 13, 1929, 45 Stat. 1167, which provides that when lands reserved under the 1892 agreement were no longer required for agency purposes title thereto was to be reinvested in the Yankton Sioux Tribe, *"Provided, however, That this Act shall not be construed to make any such land available for allotment purposes."* Section 1 of the Wheeler-Howard Act of June 18, 1934, 48 Stat. 984, 25 U.S.C.A. § 461, provides:

"No land of any Indian reservation, created or set apart by treaty or agreement with the Indians, Act of Congress, Executive order, purchase, or otherwise, shall be allotted in severalty to any Indian."

The court properly found that Forman entered upon the land originally as a permittee with the obligation to pay rent. Forman was in effect a tenant. He has acquired no vested right to an allotment of this land. Under the two statutes last cited, the land here involved has the status of tribal land and is not subject to allotment.

The trial court correctly decided that the land is not subject to allotment and, upon the basis of such determination, the judgment appealed from must be affirmed.

The issue of whether Forman was entitled to an allotment presents a difficult question of statutory construction. Forman's right to an allotment hinges upon when the period for allotment closes. The Government concedes that neither the treaty nor the allotment statute specifically fixes a cut-off date for allotment. Forman's status as a Yankton Sioux Indian is not questioned. The trial court's finding that Forman was born on December 18, 1892, is supported by substantial evidence, including Forman's own testimony. There is evidence that the allotments were completed in June of 1892.

However, the agreement for the sale of unallotted lands was not signed until December 31, 1892, and the agreement was not ratified by Congress until 1894, both of which dates are subsequent to the date of Forman's birth. The Government contends that June 1892 was the cut-off date for allotments and relies upon administrative rulings and attorney general's opinions to support its position. The trial court adopted the Government's view. No cases have been cited or found dealing with the construction of the allotment statute with reference to the closing date for allotments. Since the question of statutory interpretation as to the cut-off date is a close one, we deem it unwise to pass upon a question of such importance in a situation such as we have here, where the determination of the issue will have no bearing upon the result reached.

As heretofore stated, we hold that the real estate involved in this action was tribal land rather than public land, and as tribal land was not available for allotment.

The judgment appealed from is affirmed.